Sterling J. Stires, Esq.; SBN 199218
sstires@hwbca.com
Holmes Weddle & Barcott, P.C.
401 West A Street, Suite 1800
San Diego, California  92101
Telephone (619) 358-9987; Fax (619) 487-9551

Attorneys for Limitation Plaintiff Pacific Maritime Freight, Inc.
dba Pacific Tugboat Service

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF PACIFIC MARITIME FREIGHT, INC., DBA PACIFIC TUGBOAT SERVICE, A CALIFORNIA CORPORATION, FOR EXONERATION FROM OR LIMITATION OF LIABILITY. | IN ADMIRALTY

Case No. **'17 CV 2441 MMA BGS**

COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY BY PACIFIC MARITIME FREIGHT, INC., DBA PACIFIC TUGBOAT SERVICE

[46 USCA 30501 et seq.] |

  Limitation Plaintiff Pacific Maritime Freight, Inc., dba Pacific Tugboat Service, a California corporation, (hereinafter "PTS" or "Limitation Plaintiff") by and through their attorneys of record, for their complaint in admiralty, allege on information and belief a cause of action for exoneration from or a limitation of liability, civil and maritime, within Rule 9(h) of the Federal Rules of Civil Procedure and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure (hereinafter referred to as the "Supplemental Rules"), as follows:

## JURISDICTION AND VENUE

1.     This is a case of admiralty and maritime jurisdiction and is based upon the facts described herein.  This complaint sets forth an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, the Supplemental Rules, Rule F, and 28 U.S.C. section 1333.  Therefore, this Court has jurisdiction over this matter.

2.     PTS is the owner/operator of the vessel known as the M/V CHIEF, which has the official number 566652 (hereinafter, the "Vessel").  The underlying incident occurred within this District, the Vessel is currently operated and remains within this District, therefore, venue is proper in the Southern District of California pursuant to Rule F(9) of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

3.  The underlying incident occurred while the Vessel was moored alongside the PTS pier in San Diego Bay, San Diego, California.

4.     Not more than six months have elapsed since the receipt by Limitation Plaintiffs of any written notice of a claim arising out of the incident which would have put Limitation Plaintiffs on notice a claim may exceed the value of the Vessel.

## GENERAL ALLEGATIONS UNDER LIMITATION OF LIABILITY ACT

5.     Limitation Plaintiff is a California corporation and is the owner and/or operator of the Vessel, which has the official number 566652, and is approximately 59 feet in length.

6.     Limitation Plaintiff as the owner and/or operator of the Vessel, and by virtue of its ownership interest, dominion, and control of the Vessel, is therefore the "owner" of the Vessel as the term is applied under the Limitation of Liability Act, 46 U.S.C. section 30501 et seq.

7.     Limitation Plaintiff, prior to the incident described herein, and at all material times, has exercised due diligence to ensure the Vessel was at all materials times, including the date of the incident hereinafter described, staunch, tight, strong,

fully and properly, equipped and supplied, and in all respects fit for the service in which the vessel was engaged.

8. On or about August 14, 2016, at approximately 1:00 a.m., a fire broke out on board the Vessel while it was moored alongside the PTS pier in San Diego Bay. Henry Wimbley, Jr. (Wimbley), a shore side mechanic who worked for PTS at the time of the incident, was asleep aboard the Vessel, without the permission or knowledge of PTS. Mr. Wimbley perished as a result of the fire. The cause of the fire was found to be a lit cigarette of the deceased.

9. At all material times, the Vessel was moored alongside the PTS pier in the waters of San Diego Bay, San Diego, California.

10. The incident and all the alleged damages and losses resulting therefrom, were not caused by any negligence or fault of Limitation Plaintiff, but was a consequence of the negligence of Wimbley and/or others.

11. Limitation Plaintiff was without privity or knowledge of any unseaworthiness or dangerous condition of the Vessel preexisting the incident, and without privity or knowledge of any negligent act or omission that may have led, in any way, to the cause of the underlying incident.

12. At the time of the incident, the Vessel was out of service and moored alongside the PTS Pier in San Diego Bay.

13. There are no other demands, unsatisfied liens or claims of liens against the Vessel or any suits pending in connection therewith. Limitation Plaintiff is informed and believes and thereupon alleges, the amount of the claims by claimants may exceed the value of the Vessel at the time of the incident.

14. The Limitation of Liability Act, specifically at 46 U.S.C. section 30505, provides:

(a) In general – [T]he liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. If the vessel has more than one owner, the proportionate share of the

liability of any one owner shall not exceed that owner's proportional interest in the vessel and pending freight.

(b) Claims subject to limitation – Unless otherwise excluded by law, claims, debts, and liability subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss damage, or forfeiture, done, occasion, or incurred, without the privity or knowledge of the owner.

15.     The appropriate fair market value of the Vessel and pending freight after the incident and at the conclusion of the fire was approximately $325,000, based on the most recent Condition and Value Survey dated August 16, 2016, attached as Exhibit "A".

16.     This complaint is filed within six months after written notice was first received by Limitation Plaintiff that claimants intended on seeking damages from Limitation Plaintiff, and no other written notices or claim for damages has been given to, or received by, the Limitation Plaintiff from anyone at any time more than six months prior to the filing of this complaint.

17.     Without waiving any defenses they may have, Limitation Plaintiff Pacific Maritime Freight, Inc., dba Pacific Tugboat Service, as owners and operators of the maritime business of which the Vessel was an asset, hereby claims exemption and exoneration from liability for any and all losses or damages of any kind incurred by or resulting from the aforesaid incident or otherwise arising out of the operation of the Vessel, and Limitation Plaintiff alleges they have valid defenses thereto in fact and in law.  Limitation Plaintiff further claims the benefits of the limitation of liability provided by the Limitation of Liability Act, 46 USC section 30501 et seq., and to that end, Limitation Plaintiff is willing to proceed according to law and pursuant to the Federal Rules of Civil Procedure as made applicable to admiralty and maritime cases.

18.     Limitation Plaintiff further desires an injunction be issued by this court restraining the prosecution of any and all suits or claims which have been, may have been, or may hereafter be made against the Limitation Plaintiff in any court whatsoever to recover damages from any and all losses or damages occasioned by or incurred by, or in any way resulting from, the aforesaid incident or in any way consequent upon or otherwise arising out of the incident in question, and restraining the commencement or prosecution thereafter of any suit, action or legal proceeding against Limitation Plaintiff, its agents, servants or employees, in respect of any claim or claims arising out of the aforesaid incident or in any way resulting therefore or consequent thereupon or otherwise arising out of the incident on which the Vessel was then engaged.

19.     As noted above, the value of the Vessel at, or very near to, the conclusion of the fire was $325,000.  Limitation Plaintiff is, therefore, simultaneously with the filing of this Complaint for Exoneration and/or Limitation of Liability, submitting a Letter of Undertaking in the amount of $325,000 as security per Supplemental Rule F.

20.     Further, and simultaneously with the filing of the Complaint for Exoneration from and/or Limitation of Liability, Limitation Plaintiffs post security for costs, pursuant to Southern District Local Rule Civil Rule F.1 (CivLR F.1), in the amount of $500.

WHEREFORE, Limitation Plaintiff Pacific Maritime Freight, Inc., dba Pacific Tugboat Service prays as follows:

1.      That this Court issue an injunction restraining the prosecution of any and all suits, actions or legal proceedings which have been, may have been or may hereafter be made against Limitation Plaintiff, its agents, servants or employees, in any court whatsoever to recover damages for any and all losses or damages occasioned by or incurred by, or in any way resulting from, the aforesaid incident or in any way consequent upon or otherwise arising out of the incident in question, and restraining the commencement or prosecution thereafter of any suit, action or legal proceeding against Limitation Plaintiff, its agents, servants or employees, in respect of any claim

or claims arising out of the aforesaid incident or in any way resulting therefrom or consequent thereupon or otherwise arising out of the incident, or otherwise subject to limitation in these proceedings, except in the instant proceeding in respect of any claims arising out of the aforesaid incident;

2.     That this Court adjudge Limitation Plaintiff is not liable to any extent for any loss or damage for any claims whatsoever in any way arising out of or in consequence of the aforesaid incident;

3.     If Limitation Plaintiff shall be judged liable, then Limitation Plaintiff's liability be limited to $325,000 in damages, and a decree be entered discharging Limitation Plaintiff from any and all further liability;

4.     That this court enter an order directing the issuance of notice against all persons and/or entities claiming damages for any and all losses or damages occasioned or incurred by or in any way resulting from the underlying incident or arising therefrom or otherwise arising out of the voyage in which the marine vessel CHIEF was then engaged, or otherwise asserting any claim with respect to which the Limitation Plaintiff seeks exoneration from or limitation of liability herein, admonishing them to appear and file their respective claims with the clerk of this court and to serve on or mail copies thereof to the attorneys for the Limitation Plaintiff herein named on or before the date to be specified in said monition, and to make due proof of their respective claims, and further to file their respective answers, if any, to the allegations of this Complaint on or before the date to be specified in the notice, all as provided by law and by the Federal Rules of Civil Procedure as made applicable to admiralty and maritime cases;

5.     That this Court enter an order directing said notice be published in such newspapers as the court may direct or as may otherwise be specified by the rules of this court for legal publication once a week for at least four consecutive weeks prior to the date specified in said notice for the filing of the claims herein, and that a copy of said notice be served on the respective attorneys for all person or other legal entities

who have filed or begun suits for damage, loss or destruction or arising out of or related to the aforesaid incident, together with a copy of the order directing the issuance of the notice;

6.     That this Court enter an order stating the Limitation Plaintiff has complied with Supplemental Rule F(1), which requires the posting of security for value of the Vessel and for costs, and has complied with Supplemental Rule F(2), which required a complaint for exoneration and/or limitation to contain certain information; and

7.     That Limitation Plaintiff be awarded such other and further relief as the Court may deem just and proper.

DATED:  December 5, 2017

HOLMES WEDDLE & BARCOTT, P.C.


By:/s/ Sterling J. Stires
          Sterling J. Stires,
          Attorneys for Limitation Plaintiff
          Pacific Maritime Freight, Inc. dba
          Pacific Tugboat Service

**EXHIBIT "A"**



## CONDITION AND VALUATION SURVEY

**M/V "CHIEF"**

**AT**

**SAN DIEGO, CA - USA**

**SURVEY DATE: AUGUST 16, 2016**

**MIL FILE: 16-09-01479**

**A/C: PACIFIC TUGBOAT SERVICES**



**3523 NW 24th Circle, Camas, WA  98607**
**Tel: 360-817-9155 • Cell: 732-996-7313**
**www.marineinspection.com**

# REPORT OF SURVEY, CONDITION AND VALUATION

VESSEL:  'CHIEF'
FILE NO. 16-09-01479

*This report is issued in accordance with the terms and conditions printed on the reverse side of the last page (or) attached as enclosure #1 (electronic reports)*

**THIS IS TO CERTIFY** that he undersigned Marine Surveyor did on August 16, 2016 acting at the request of Pacific Tugboat Services, attend on board the vessel "CHIEF", while at the port of San Diego, CA, for the purpose of performing a Condition Survey.  At the time of survey the vessel was afloat.

## GENERAL INFORMATION

| | | |
|---|---|---|
| 1. | VESSEL NAME: | CHIEF |
| 2. | OFFICIAL NUMBER: | 566652 |
| 3. | HULL IDENTIFICATION NO. (HIN) | 9094896 |
| 4. | OWNER: | Sortwell, Inc. |
| 5. | ADDRESS: | 201 Burma Road, Oakland, CA  94607 |
| 6. | HOME PORT: | San Francisco, CA |
| 7. | GROSS TONS: | 127 |
| 8. | NET TONS: | 86 |
| 9. | BUILDER: | Alabama Marine, Bayou La Batre, LA |
| 10. | YEAR BUILT: | 1975 |
| 11. | INTENDED SERVICE: | Inland Pusher Tug |
| 12. | CRUISING SPEED/RANGE: | 7.5 Kts. / 1600 NM (assumes 60 GPH fuel burn and 20% fuel reserve) |
| 13. | LAST DRY DOCKING: | 2005 |
| 14. | CONVERSIONS/MODIFICATIONS | Repowered in 2001 Burn and 20% fuel reserve) |

## VESSEL PARTICULARS

| | | |
|---|---|---|
| 1. | LENGTH OVERALL: | 62' |
| 2. | REGISTERED LENGTH: | 59.2' |
| 3. | BEAM: | 24.0' |
| 4. | DRAFT: | 7.0' (est.) |
| 5. | DEPTH: | 9.3 |
| 6. | SHELL PLATE: | Welded steel plate |
| 7. | SUPERSTRUCTURE: | Welded steel plate |
| 8. | FRAMES: | Various sized welded steel angles and shapes |

North America    •    Europe    •    China    •    Malaysia



**GENERAL DESCRIPTION AND ARRANGEMENT**

Vessel is a typical 3-deck, twin-screw inland push tug.

There is an open foredeck with two (2) push knees sitting about 13' off the main deck separated by 15'. There are two (2) 65-ton hydraulic barge makeup winches controlled from the pilothouse. There is a watertight hatch leading into the forepeak locker and stairs leading to the Texas Deck, which as a ramp to the port push knee. Side decks lead aft past the deckhouse, which is fitted with handrails. There is a low bulwarks with two (2) cruciform bitts ranged atop on each side. On the aft deck there is a tow bitt forward with a raised, closed chock aft. The steering gear sits beneath a raised, grated trunk. Access to the lazarette is through two (2) raised trunks fitted with Baire oval hatches on each side. Fuel fills and vents are located on built-in containment pans.

In the deckhouse forward is the galley followed by the engineer's cabin to port and a head to starboard. There is a washer dryer in the head. On the second deck are two (2) staterooms and a head. There is a stair to the second deck from the galley. There is a stair from the second deck to the pilothouse. The stairs, which are on the steep side, are equipped with deep, flat treads and adequate railings. The doors in the deckhouse on the main deck are watertight. Upper deck doors are non-watertight. All upper decks are surrounded with 2-tier railing in good conditions. The height of eye is estimated at 28'. All decks have newly applied non-stick surfaces.

In the full forward is the forepeak storage. Aft are port and starboard fuel tanks each containing 8,000 gallons. Aft is the engine room, followed by a single 8,000-gallaon water tank then the lazarette, which was sealed and not entered.

**PROPULSION**

|    |                          |                          |
|----|--------------------------|--------------------------|
| 1. | *NUMBER OF ENGINES:*     | Two                      |
| 2. | *FUEL:*                  | Diesel                   |
| 3. | *MAKE/MODEL:*            | Cummins K38-M Tier II    |
| 4. | *TOTAL HORSEPOWER:*      | 2,000 hp                 |
| 5. | *PORT ENGINE HOURS:*     | 5,000                    |
| 6. | *STARBOARD ENGINE HOURS:*| 5,000                    |
| 7. | *COOLING:*               | Fresh water through coolers |
| 8. | *EXHAUST:*               | Dry Stack                |
| 9. | *STARTING:*              | 24V DC Electric          |
| 10.| *REVERSE/REDUCTION GEAR:*| Twin Disc                |
| 11.| *GEAR RATIO:*            | 7.000 : 1                |



## AUXILLIARY EQUIPMENT

1. *Auxiliary generator(s):*       (2) Northern Lights
2. *Rating:*       50KW @ 1800 Rpm
3. *Cooling:*       Freshwater through coolers
4. *Exhaust:*       Dry Stack
5. *Pumps/Auxiliary Equipment:*

- Dayton WEG 4XZ47 fire pump
- Teel 2 hp bilge/fire pump
- Dayton potable water pump with pressure tank
- 30 gallon electric hot water heater
- (2) Quincy 325 air compressors with accumulators

## ELECTRICAL SYSTEM

1. *AC System Description:*
AC electric is from either of the vessel's 55KW genset or shore power.  There is a slid bar system and safety switch to prevent simultaneous energization of sources.  There are two (2) main breaker panels in the engine-room and a sub-panel in the pilothouse.  For the most part, other than ore recently installed wiring, the electrical system appeared well installed and sound.

2. *DC System Description:*
These are two (2) 8-D 12VDC wet cell batteries for each main engine cranking and two (2) gp. 24 12VDC batteries for each main engine DDEC.  Cranking batteries are charged by Lewmar 2440ACD charger and the DDEC batteries by engine driven alternators.  Each genset has a 12VDC 8-D wet call battery charged by a phase 3 PT-25 charger.

## MISCELLANEOUS EQUIPMENT AND SYSTEMS

1. *Marine Sanitation Device:*       Red Fox RF50-A-FP
2. *Bilge pumps/Piping:*       230 VAC fixed for engine room with ecology dams at propeller shaft packing equipped with 120 VAC submersible sump pumps
3. *Bilge Pumps Tested:*       No
4. *Domestic Water System:*       Dayton potable water pump with pressure tank with electric hot water heater
5. *Ventilation:*       230 VAC fan
6. *Hvac Systems:*       LG Heater/AC Units



7. *Alarms:*

Kidde Scorpion Fire Detection System
High bilge level alarms in forepeak & engine room
Port Stbd Main Engines:
  Fuel oil pressure
  Expansion tank level
  Water temperature
  Lube oil level
  Lube oil pressure
  Reduction gear oil level

## STEERING SYSTEM

1. *Number of Stations:*
2. *Description/Type of Equipment:*

One (1)
There are two (2) hydraulic pumps powered by 230 VAC 3 phase 7.5 HP motors.  Each pump feeds a manifold that provides hydraulic power to either the main or flanking rudders.  Steering is controlled through electric pilot valves by either lever or joy stick steering low voltage controls.  Steering gear are hydraulic rams connected to tiller arms located aft main deck.

## TANKAGE

1. *Fuel Tanks:*
2. *Total Capacity:*
3. *Material:*
4. *Grounding:*
5. *Shut Off Valves:*
6. *Vents:*
7. *Vent Screens:*
8. *Fresh Water Tanks:*
9. *Total Capacity:*
10. *Material:*
11. *Other:*

Two (2)
16,000 gallons
Integral welded steel
N/A
Remote from port main deck
In containment on main deck
Yes with check valves
One ()
8,000 gallon
Integral welded steel
275 gallon lube oil tank
Waste oil tank (size unknown)



**GALLEY EQUIPMENT**

|   |   |   |
|---|---|---|
| 1. | *Stove:* | GE 4 burner with oven |
| 2. | *Fuel:* | 230 VAC Electric |
| 3. | *Refrigeration Equipment:* | Galaxy Domestic Type |
| 4. | *Other:* | Cabinets with sink |
|   |   | L shaped dinette |
|   |   | GE XL 1800 microwave |
|   |   | Kenmore apt size washer/dryer in head aft of galley |

**GROUND TACKLE**

|   |   |   |
|---|---|---|
| 1. | *Anchors:* | 40 lb. Danforth emergency anchor in Forepeak |
| 2. | *Windlass:* | None |
| 3. | *Chain:* | 10 ½" |
|   |   | Room |

**NAVIGATION/ELECTRONIC EQUIPMENT**

| | |
|---|---|
| Radar: | Furuno FR 805D (815-1384); Furuno 1835 |
| VHF Radios: | (1) SEA 156; (1) Icom IC M504; (1) Icom IC M422 |
| GPS: | Garmin GPS 120 XL |
| Plotter: | Furuno GP-7000 |
| Compass: | Ritchie 6" with correction balls |
| Hailer: | Horizon LH5 |
| Other: | SAAB AIS/GPS |
| | Radioshack CB Radio |
| | Maximum wind speed |
| | Weems & Plath barometer |

**DECK/SPECIAL EQUIPMENT**

Two (2) 65 ton hydraulic powered barge makeup winches



**RECENTLY COMPLETED WORK (2015)**

- New fleet deck, mostly stainless steel
- New headlog between knees
- Stainless scupper for winch controls
- Corner stern rubber
- Dripless packing simplex
- Steering Rams rebuild
- Props re done
- Stainless framing for rudder farm
- New exterior LED lights
- Blast and paint whole boat
- Wash pump new, fire pump rebuild

**CONDITION**

In the deckhouse forward is the galley followed by the Engineer's cabin to port and a head to starboard.
There is a washer dryer in the head.

| | |
|---|---|
| Galley: | Completely burnt and all equipment affected by fire. |
| Engineer's Cabin: | Completely burnt and all equipment affected by fire. |
| Head: | Completely burnt and all equipment affected by fire. |

Stairway to the second deck from the galley: Completely burnt and affected by fire.

On the second deck are two (2) staterooms and a head.

| | |
|---|---|
| Stateroom #1: | Completely scorched and all equipment affected by fire. Window partly melted. |
| Stateroom #2: | Completely scorched and all equipment affected by fire. Window partly melted. |
| Head: | Completely burnt and all equipment destroyed by fire. |

Stairway from the second deck to the pilothouse: Completely burnt and affected by fire.

| | |
|---|---|
| Pilothouse: | Completely burnt and all equipment affected by fire. Windows partially melted and broken. |
| Upper Bridge: | Furuno Antenna scorched and partially melted. Starboard Navigation Housing and Navigation Light scorched and affected by fire. |



Plating between Pilothouse and Upper Bridge, scorched.
Port, Forward and Starboard areas heavily affected.
Aft Area moderately scored at starboard side.

Main Deck:    Exterior deckhouse plating, scorched in vicinity of exterior starboard door and portholes.
Unable to determine if plating distorted.
Paint removal required for inspection.

Engine Room:    Maintenance was noted ongoing to the Starboard Engine, with the cylinder head removed.
Aside from minimal scattered ash, there was no indication of fire damage to any of the components or equipment in the Engine Room.



# VALUATION REPORT

### *VESSEL:* "CHIEF"

San Diego, California
August 16, 2016

Vessel:                          **Vessel "CHIEF"**

Location:                        Pacific Tugboat Services facility
                                 San Diego, California

**This will certify that** the undersigned Marine Surveyor attended the above mentioned facility to inspect the **VESSEL** *"CHIEF"* afloat at Pacific Tugboat Services San Diego, CA on August 16, 2016.

**The purpose of the attendance** was to examine and report upon the condition of the vessel in the present condition and determine a fair market value.

## VALUATION

Vessel's Estimated Fair Market Value:                    $275,000 - $325,000

*This report is issued without prejudice to any parties who may be concerned.*

For and on behalf of
Marine Inspection, LLC.

Thomas M. Tice

**North America** • **Europe** • **China** • **Malaysia**



**EXTERIOR OF WHEEL HOUSE**







**EXTERIOR OF WHEEL HOUSE**







**EXTERIOR OF WHEEL HOUSE**





**UPPER BRIDGE**







**UPPER BRIDGE**







**UPPER BRIDGE**







## MAST







**MAST**





**UPPER BRIDGE**







**UPPER BRIDGE**







**UPPER BRIDGE**







**UPPER BRIDGE**







## EXTERIOR:  BRIDGE AND WHEEL HOUSE







**EXTERIOR:  BRIDGE AND WHEEL HOUSE**



